# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PAUL M. NIGL and SANDRA JOHNSTON,

        Plaintiffs,

v.

JON LITSCHER, MICHAEL MEISNER, SARA HUNGERFORD, and ZACHARY SCHROEDER,

        Defendants.

Case No. 17-CV-925-JPS

**ORDER**

  Plaintiffs Paul M. Nigl ("Nigl"), a prisoner, and Sandra Johnston ("Johnston"), his fiancée, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging their civil rights were violated. (Docket #1). Specifically, the plaintiffs allege that the defendants violated their rights under the First and Fourteenth Amendments by not allowing them to marry and by denying them visitation privileges. Nigl paid the filing fee on July 31, 2017.

  The plaintiffs consented to magistrate judge jurisdiction and, on August 7, 2017, the magistrate judge originally assigned to this case screened the plaintiffs' complaint. (Docket #16). The Prison Litigation Reform Act ("PLRA") requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity and dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(a) and (b).

Upon screening, the magistrate judge allowed the plaintiffs to proceed with their claim that the defendants unconstitutionally burdened their right to marry. (Docket #16 at 4). However, the magistrate judge dismissed the plaintiffs' claim that the defendants acted unconstitutionally by denying visitation. *Id.* at 4-5. Finally, the magistrate judge denied the motion for a preliminary injunction that the plaintiffs had filed along with their complaint. *Id.*

The plaintiffs then filed an objection to the magistrate judge's screening order. (Docket #17). In it, they contend that the magistrate judge erred both in dismissing their First Amendment claim based on denial of visitation rights and in failing to screen their Fourteenth Amendment equal protection claim based on denial of visitation rights. *Id.*

After the plaintiffs' objection was filed, the defendants entered the case and refused to consent to magistrate judge jurisdiction. (Docket #18-20). At that point, the case was reassigned to this branch of the Court. The plaintiffs have since filed several motions now pending before this Court, including another motion for a preliminary injunction, (Docket #23), a motion to appoint counsel and to be transferred to another institution, (Docket #27), a motion for a hearing, (Docket #28), and a motion to vacate the magistrate judge's screening order, (Docket #30). The Court addresses each motion below.

1. **SCREENING OF THE COMPLAINT**

Until all parties have an opportunity to consent to magistrate judge jurisdiction, a magistrate judge presiding over a case may not enter an order that disposes of an entire case. *See Coleman v. Labor & Indus. Review Comm'n*,

860 F.3d 461, 475 (7th Cir. 2017). "Rather than entering final judgments, they must issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court." *Id.* (quotation omitted). District courts in this circuit have interpreted *Coleman* to apply not only to a magistrate's proposed dismissal of an entire case, but to dismissal of a single claim as well. *See, e.g., Jones v. Marcus,* No. 17-C-1265, 2017 WL 5032719, at *1 (E.D. Wis. Oct. 31, 2017) (considering magistrate judge's recommendation that one of the three claims in the plaintiff's complaint be dismissed).

As explained above, before this case was reassigned to this branch of the Court, the magistrate judge entered a screening order dismissing one of plaintiffs' claims. (Docket #16). This Court will treat the magistrate's screening order as a recommendation and review its factual findings and legal conclusions *de novo.* The Court will consider, as part of its review, the plaintiffs' objection to the screening order. (Docket #17). The Court will deny as moot plaintiffs' motion to vacate the magistrate judge's screening order. (Docket #30).

The Court concurs with the magistrate's recital of the relevant factual allegations, repeated here for the sake of completeness. Nigl has been a prisoner since 2001. From 2013 to 2015, Johnston worked as a psychologist at Waupun Correctional Institution, where she met Nigl. On January 10, 2015, Johnston left her job at Waupun and began to work at the Wisconsin Resource Center, which is not a Department of Corrections' ("DOC") facility and is therefore not governed by DOC policies. A couple of days after Johnston left her job at Waupun, Nigl asked his brother to find her contact information on the internet. Nigl then wrote and called Johnston on a regular basis. In April 2015, Nigl asked Johnston to marry him, and she said yes.

On July 13, 2015, the DOC rehired Johnston for a job at its central office in Madison, Wisconsin. That day, she tried to submit a fraternization policy exemption request form so that she could have contact with Nigl. Johnston's supervisor, Gary Ankarlo ("Ankarlo") refused to accept the form and admonished her. According to plaintiffs, Ankarlo was later demoted and reassigned, in part, for refusing to accept the form. Despite Ankarlo refusing to accept the form, plaintiffs continued to have contact with one another.

On October 31, 2015, Johnston's position at the central office was administratively eliminated because of her contact with Nigl. In November 2015, Johnston requested to be added to Nigl's visitor list. The request was denied based on DOC policy because Johnston had been an employee of the DOC within the last twelve months.

In November 2016, Johnston again requested to be added to Nigl's visitor list. On November 30, 2016, defendant Sara Hungerford ("Hungerford") recommended denial of the request because: 1) the warden had reasonable grounds to believe that Johnston had attempted to bring contraband into the institution or that she posed a threat to the safety and security of visitors, staff, offenders, or the facility; 2) the warden had reasonable grounds to believe that Nigl's reintegration into the community or rehabilitation would be hindered; and 3) the warden had reasonable grounds to believe that Nigl's offense history indicated there could be a problem with the visitation. Defendant Zachary Schroeder, Hungerford's supervisor, adopted Hungerford's recommendation.

On December 8, 2016, plaintiffs submitted a request to be married, which included written confirmation from an officiant willing to perform the ceremony. On January 25, 2017, Hungerford recommended denial of the

request. She stated that "there are reasonable grounds to believe the marriage poses a threat to the security of the facility or a threat to the safety of the public, or threatens other legitimate penological interests" and "[t]he proposed spouse has not been on the visiting list for at least one year and is not able to demonstrate a longstanding relationship." (Docket #1 at 5). Nigl submitted numerous inmate complaints about the denial of his requests for visitation and marriage. Defendants Jon Litscher and Michael Meisner affirmed the recommendations that those requests be denied.

Based on these allegations, the plaintiffs propose three claims: (1) violation of their Fourteenth Amendment right to form an intimate relationship based on defendants' refusal to allow them to marry, (2) violation of their First Amendment right to freedom of association based on defendants' refusal to allow visitation, and (3) violation of their Fourteenth Amendment right to equal protection, as a class of one, based on defendants' refusal to allow visitation. (Docket #1 at 8).

The Court agrees with the magistrate's assessment that the plaintiffs have stated a Fourteenth Amendment substantive due process claim for violation of their fundamental right to marry. *See Turner v. Safley*, 482 U.S. 78, 94-96 (1987); *Riker v. Lemmon*, 798 F.3d 546, 551 (7th Cir. 2015). Whether the defendants' refusal to allow the plaintiffs to marry "is reasonably related to legitimate penological interests," and therefore valid, is a question best left for resolution after discovery and briefing by the parties. *Riker*, 798 F.3d at 551.

As to the plaintiffs' claims regarding visitation, this Court's analysis differs somewhat from that of the magistrate judge. First, the plaintiffs are misguided in their insistence that the First Amendment protects their right to visitation; their right to visitation, like their right to marry, would arise

from the Due Process Clause of the Fourteenth Amendment. The Constitution protects two distinct forms of free association. The freedom of expressive association arises from the First Amendment and ensures the right to associate for the purpose of engaging in protected speech or expressive conduct. *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005) (citing *Roberts v. U.S. Jaycees,* 468 U.S. 609, 617–18 (1984)). That protection is not applicable here. The freedom of intimate association arises from the Due Process clause and protects the fundamental right "to enter into and maintain certain intimate human relationships." *Montgomery*, 410 F.3d at 937 (quoting *Roberts*, 468 U.S. at 617).

The Due Process Clause, then, would be the appropriate theory for relief, but the plaintiffs do not have a protactable liberty interest for visitation under the Due Process Clause. The Seventh Circuit has explained that the Due Process Clause does not independently protect an inmate's access to a particular visitor, including a girlfriend or fiancée. *See Cherry v. McCaughtry*, 49 F. App'x 78, 2002 WL 31408905, at *1 (7th Cir. 2002) (inmate's temporary inability to visit his fiancée did not implicate a liberty interest); *Billups v. Galassi*, 202 F.3d 272, 2000 WL 6200, at *1 (7th Cir. 2000) (visiting privileges with girlfriend could be permanently revoked without a hearing "or any other due process protection"); *see also Bilka v. Farrey*, 447 F. App'x 742, 744 (7th Cir. 2011) ("[W]e have not recognized that [the right to intimate association] extends to someone who wants to visit a non-relative in prison."); *Martin v. Snyder,* 329 F.3d 919, 921 (7th Cir. 2003) (noting with approval a district court's conclusion that even a prisoner's fiancée "has no independent right to visit" a prisoner).

And although a state may create a liberty interest in such visitation, *see Billups*, 2000 WL 6200, at *1 (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S.

454, 461 (1989)), an inmate's state-created liberty interests are protected under the Due Process Clause only insofar as a deprivation of the interest would impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). The denial of a specific visitor's visiting privileges is "well within the terms of confinement ordinarily contemplated by a prison sentence," *Thompson,* 490 U.S. at 460, and therefore the restriction on Johnston visiting Nigl in this case does not inflict an "atypical and significant hardship." Thus, the plaintiffs' visitation privileges do not implicate a constitutionally protected liberty interest, and they cannot state a due process claim for denial of those privileges.

Finally, the plaintiffs allege a class-of-one equal protection claim under the Fourteenth Amendment based on the defendants' refusal to allow visitation for them but not for "similarly situated persons." (Docket #1 at 8). The magistrate judge did not address plaintiffs' equal protection claim in her screening order. In a class-of-one equal protection case, the plaintiff must prove that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 601 (2008). The Seventh Circuit has implied that it is possible for an inmate, or his would-be visitor, to state a class-of-one equal protection claim based on denial of visitation if the plaintiff alleges that the prison allows visits between similarly-situated inmates and visitors. *See Bilka v. Farrey*, 447 F. App'x at 744.

Here, the plaintiffs generally allege in their complaint that the defendants treated other would-be visitors differently but do not identify any such visitors. In their objection to the magistrate's screening order, they

allege that such comparators might exist and they might be able to identify them after taking discovery. (Docket #17 at 7-8). They also point to *Bilka*, wherein the Seventh Circuit affirmed a district court's dismissal of an equal protection claim based on a prison's refusal to allow visits between an inmate and a former prison employee who had been caught smuggling contraband to that inmate. *Bilka*, 447 F. App'x at 743-44. According to the plaintiffs, sometime after the Seventh Circuit's decision in *Bilka,* the DOC nonetheless started allowing visits between the inmate and the former employee from that case. (Docket #17 at 7). In other words, interpreting the plaintiffs' submissions generously, they allege that the DOC allows other rule-breaking former employees to visit inmates but is not allowing the same for them.

While most circuits require highly specific allegations regarding the "similarly situated" element of an equal protection claim to validly state such a claim, the Seventh Circuit has set an extremely low pleading standard. *Geinosky v. City of Chicago*, 675 F.3d 743, 747-48 (7th Cir. 2012). Consequently, though the Court has misgivings about whether the plaintiffs can point to any similarly situated comparators, it must allow the claim to proceed at this time.

For the reasons stated above, the Court finds that the plaintiffs may proceed on the following claims: (1) a Fourteenth Amendment due process claim based on the denial of their right to marry, and (2) a Fourteenth Amendment equal protection claim based on the defendants' denial of visitation privileges for them but not for similarly-situated persons.

2.    **MOTION FOR PRELIMINARY INJUNCTION**

Next, the plaintiffs have moved the Court for a preliminary injunction, allowing them "a one-time visit in order to participate in a brief

marriage ceremony, pending the adjudication of the defendants' liability for unreasonably burdening their right to marry." (Docket #24 at 1). They have also requested a hearing on their motion for an injunction. (Docket #28).

To obtain a preliminary injunction, the plaintiffs must show that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016). A preliminary injunction is "an extraordinary remedy and is never awarded as of right." *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016). To meet this burden, the plaintiffs must make a "clear showing that [they are] entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

A preliminary injunction is not appropriate in this case. First, the plaintiffs have alleged enough to pass the low bar of screening, but they have not shown they are likely to succeed on the merits of their claims. As explained above, the defendants' refusal to allow the plaintiffs to marry does not violate the plaintiffs' constitutional rights if the refusal "is reasonably related to legitimate penological interests." *Riker*, 798 F.3d at 551. At this stage, the Court cannot say that the plaintiffs are likely to overcome this hurdle. Further, the Court is not inclined to insert itself into matters of prison administration, to which it normally accords substantial deference. *See* 18 U.S.C. § 3626(a)(2); *see also Hewitt v. Helms*, 459 U.S. 460, 467 (1983) ("[P]rison officials have broad administrative and discretionary authority over the institutions they manage."). For these reasons, the plaintiffs' motion for a preliminary injunction will be denied. Their motion for a preliminary injunction hearing will be denied as well.

### 3. MOTION FOR APPOINTMENT OF COUNSEL AND TO TRANSFER INSTITUTIONS

The final motion remaining to be resolved at this juncture asks the Court to appoint counsel for the plaintiffs and to order Nigl's transfer to another prison. (Docket #27).

As civil litigants, the plaintiffs have no automatic right to court-appointed counsel. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). Under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Here, the only basis the plaintiffs present to support their need for counsel is that the warden of the prison where Nigl is incarcerated can listen into their calls, and they would prefer to communicate privately about their case, so they would like a lawyer to be appointed for the purpose of having private conference calls with the plaintiffs. (Docket #27 at 1). The plaintiffs have not come close to making an adequate showing that they cannot secure their own counsel or that they cannot competently litigate this case themselves. Their motion for appointment of counsel will be denied.

The Court will also deny Nigl's request, presented in the same motion, to be transferred to another institution. Nigl believes that defendant Meisner is harassing and retaliating against him for reasons related to the facts alleged in the complaint. The matter of transfer between correctional institutions is generally not within the Court's purview.

Instead, this is an administrative matter for the Department of Corrections to consider. *See Capoeira v. Pollard*, Case No. 16-CV-224, 2016 WL 1452398, at *4 (E.D. Wis. Apr. 13, 2016); *Lindsey v. Brown*, No. 2:13–cv–00068–JMS–WGH, 2013 WL 5148347, at *1 (S.D. Ind. Sept. 11, 2013). Additionally, Nigl's unverified allegations of disciplinary retaliation do not clearly demonstrate that he in imminent danger of irreparable harm, thereby meriting such preliminary injunctive relief. *See Teamsters Local Unions Nos. 75 & 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999); *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006); *Douglas v. Lemmon*, No. 2:16-cv-00368-JMS-DKL, 2016 WL 7034965, at *2 (S.D. Ind. Dec. 2, 2016) (denying motion for transfer to another prison based on alleged retaliation for bringing lawsuit). This request will, therefore, be denied.

Accordingly,

**IT IS ORDERED** that the plaintiffs' objection to the magistrate judge's screening order (Docket #17) be and the same is hereby **SUSTAINED in part as reflected in this Order.** This Order is now the operative Screening Order in this matter;

**IT IS FURTHER ORDERED** that the plaintiffs' motion to vacate the magistrate judge's screening order (Docket #30) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion for a preliminary injunction (Docket #23) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the plaintiffs' motion for a preliminary injunction hearing (Docket #28) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the plaintiffs' motion for appointment of counsel and to order Nigl's transfer to a different institution (Docket #27) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendants shall file a responsive pleading to the complaint, as screened by the Court in this Order, within sixty (60) days of receiving electronic notice of this Order; and

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the warden of the institution where the inmate is confined.

Dated at Milwaukee, Wisconsin, this 6th day of March, 2018.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge